

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DAVID GREENE,<br>          Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, *Acting Commissioner of*<br>*the Social Security Administration*,<br>          Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:21-01430-MGL |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND AFFIRMING DEFENDANT'S DECISION**

This is a Social Security appeal in which Plaintiff David Greene (Greene) seeks judicial review of the final decision of Defendant Kilolo Kijakazi (Kijakazi) denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act).

The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting the Court affirm Kijakazi's decision denying benefits. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or

recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see* Fed. R. Civ. P. 72(b).

The Magistrate Judge filed the Report on April 21, 2022. Greene objected on May 5, 2022, and Kijakazi replied on May 19, 2022. The Court has reviewed Greene's objections, but holds them to be without merit. It will therefore enter judgment accordingly.

Greene filed his application for DIB on August 22, 2014. He contends his disability commenced on January 30, 2014. The Commissioner denied his claims initially and upon reconsideration.

Greene requested a hearing before an Administrative Law Judge (ALJ). The ALJ conducted a hearing on November 14, 2017. In the ALJ's March 1, 2018, decision, she held Greene was not disabled under the Act. The Appeals Council denied Greene's request for review of the ALJ's decision on September 17, 2018. Greene filed an action for judicial review with this Court. This Court remanded to the ALJ for further proceedings on November 25, 2019.

Accordingly, the ALJ held another hearing on October 15, 2020. After the hearing, the ALJ determined Greene had the following severe impairments: degenerative disc disease, degenerative joint disease of the knees and first carpometacarpal joints, and carpal tunnel syndrome. Nevertheless, the ALJ again issued an unfavorable decision on December 4, 2020. The Appeals Council again declined to assume jurisdiction on April 20, 2021. Greene thereafter filed this action with the Court.

The Act has, by regulation, reduced the statutory definition of "disability" to a series of five sequential questions to determine if a person is disabled. 20 C.F.R. § 404.1520(a). The five

steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment as set forth in the Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix I; (4) whether the impairment(s) prevents the claimant from returning to his past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

It is the plaintiff's duty both to produce evidence and prove he is disabled under the Act. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (explaining the plaintiff has the burden of proof and production at the first four steps, and thereafter the burden shifts to the defendant for the fifth step).  Nevertheless, the ALJ is to develop the record and when he "fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded."  *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).

It is also the task of the ALJ, rather than this Court, to make findings of fact and resolve conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "It is not within the province of this [C]ourt to determine the weight of the evidence; nor is it [the Court's] function to substitute [its] judgment for that of [the ALJ] if [the] decision is supported by substantial evidence."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In other words, the Court "must sustain the ALJ's decision, even if [it] disagree[s] with it, provided the determination is supported by substantial evidence."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  Under the substantial evidence standard, the Court must view the record as a whole.  *See Steurer v. Bowen*, 815 F.2d 1249, 1250 (8th Cir. 1987) ("In reviewing a denial of

Social Security benefits, this court must determine whether substantial evidence on the record as a whole supports the [ALJ's] decision.").

Although ALJs must sufficiently explain the reasons for their rulings to allow this Court to provide meaningful review, *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (internal quotation omitted). Instead, he must "build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

"[T]he substantial evidence standard presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988) (citations omitted) (internal quotation marks omitted) (alteration omitted). Put differently, if the ALJ's "dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported." *Kellough v. Heckler*, 785 F.2d 1147, 1149 (4th Cir. 1986).

The Court has divided Greene's objections into five categories.

First, he insists the Magistrate Judge erred by applying the new regulations to this case, which was filed before March 2017. Kijakazi maintains the Magistrate Judge applied the proper regulations.

Under the regulations applicable to claims filed before March 27, 2017, the ALJ must consider and evaluate the persuasiveness of the opinion evidence by considering each of the

4

Section 404.1527 factors: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and other relevant factors. 20 C.F.R. § 404.1527(c).

The Magistrate Judge placed the most emphasis on the supportability and consistency factors. But, neither the Magistrate Judge nor the ALJ ignored the other factors. Nor did they cite to the new regulations in their analysis. In fact, the Magistrate Judge listed each of the Section 404.1527 factors in the Report. The Court will thus overrule this objection.

Second, Greene maintains the Magistrate Judge misinterpreted his argument regarding the lack of treatment opinions. He explains that he argued, not that treating opinions were required, but instead that the three examining sources had the strongest relationship with Greene. Kijakazi counters the Magistrate Judge acknowledges the nature of the relationship between Greene and the opinion source are a factor to be considered in evaluating the weight of the opinions.

The Magistrate Judge properly explained that "[i]f the record contains no treating opinion, the ALJ is required to evaluate all the opinions based on the 20 C.F.R. § 404.1527 factors[.]" Report at 7; *see also* 20 C.F.R. § 404.1527(c) (requiring the ALJ to "evaluate every medical opinion [it] receive[s]."). The Report acknowledged that "[g]enerally, more weight is given to the opinions of examining physicians than nonexamining physicians." Report at 7 (citing 20 C.F.R. § 404.1527(c)(1)).

The Magistrate Judge thus acknowledged that, in the absence of a treating physician opinion, Greene's examining doctor opinions had the closest relationship to Greene. But, considering the other factors, as the ALJ did, the Magistrate Judge determined assignment of

limited weight to the examining opinions was supported by substantial evidence. *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."). The Court will thus overrule this objection.

Third, Greene insists the Magistrate Judge erroneously relied on a post hoc rationale regarding Dr. Edwin O. Byrd, III's (Byrd) opinion. Kijakazi counters that the Court may consider evidence in the record consistent with the ALJ's finding.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted) (internal alteration omitted). The Report does just that.

The Magistrate Judge looked to the record, and found substantial evidence supported the ALJ's assignment of partial weight to Byrd's opinion. The Magistrate Judge based his determination on the ALJ's analysis, which emphasized that Byrd "only had the opportunity to examine [Greene] on one occasion." Report at 9 (quoting ALJ Decision at 13). That "Byrd's opinion is the only opinion that included an exam during the relevant time period[,]" *id.*, factored little, if any, into the Magistrate Judge's determination that the ALJ's decision was supported by substantial evidence.

Therefore, rather than accepting a post hoc rationalization and going beyond "the 4 corners of the ALJ's decision[,]" Objections at 2, the Report properly reviews the record to evaluate the ALJ's decision for substantial evidence. This objection thus also fails.

Fourth, Greene contends the ALJ's findings regarding Byrd and Dr. Davis S. Rogers (Rogers), were each internally contradictory. Specifically, he insists it is impossible for the ALJ

6

to have determined Byrd and Rogers gave opinions if she determined they failed to opine on Greene's functional limitations. Kijakazi argues that the regulatory definitions that applied to Greene's claim allowed the ALJ latitude to consider broad medical opinions. She thus insists the ALJ's findings are reconcilable.

Under the applicable regulations, a medical opinion is defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); *cf.* 20 C.F.R. § 404.1513(a)(2) (defining medical opinion for claims filed after March 27, 2017 as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in certain work-related abilities).

Even if Byrd and Rogers declined to opine on Greene's functional limitations, it is still possible for them to have offered a medical opinion under these broader regulations. Byrd and Rogers commented on the nature and severity of Greene's impairments, even if they failed to address what Greene could still do despite his impairments. Neither the ALJ nor the Magistrate Judge's findings suffered from internal inconsistency as Greene argues.

The ALJ's determination was thus supported by substantial evidence, and the Court will thus overrule these objections as well.

Fifth, Greene posits the Magistrate Judge ignored evidence in the record supporting Dr. David Junker's opinions. Kijakazi insists Greene is improperly requesting the Magistrate, as well as this Court, reweigh the evidence already considered by the ALJ.

Although "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points

7

to a disability finding[,]" *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (internal quotation omitted), the Court must refrain from reweighing the evidence or otherwise substituting its judgment for the ALJ, *see Laws*, 368 F.2d at 642 ("It is not within the province of this [C]ourt to determine the weight of the evidence; nor is it [the Court's] function to substitute [its] judgment for that of [the ALJ] if [the] decision is supported by substantial evidence.").

Greene maintains the Magistrate Judge neglected to address the ALJ's failure to consider evidence in the record of Greene's limitations and problems with his activities, which he asserts support Junker's opinion. The ALJ noted Greene's daily activities as conflicting with Junker's opinion. But, this observation was simply one piece the ALJ used to discount Junker's opinion. The ALJ reviewed the evidence in the record, and properly determined it undermined the limitations opined by Junker.

For example, as Kijakazi points out, Junker opined Greene's impairments precluded bending, but Greene reported participating in activities that required at least some bending. That Greene may have had some limitations on those activities fails to alleviate the contradiction. And, evidence indicates those limitations may have been less severe than Greene alleged. *Cf. Brown v. Comm'r of Soc. Sec.*, 873 F.3d 251, 270 (4th Cir. 2017) (reasoning the ALJ improperly held the applicant's statements about his pain to be in conflict of the evidence when there was evidence he was limited in his daily activities by his pain and differentiating between "sporadic" activities and regular, daily activities).

The ALJ properly weighed all evidence and resolved evidentiary conflicts between different medical opinions. The Court refuses to impede on the role of the ALJ to do just that, so the Court will thus also overrule this objection.

Accordingly, after a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules each of Greene's objections, adopts the Report, and incorporates it herein.  Therefore, it is the judgment of the Court Kijakazi's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Signed this 14th day of July 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE